IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| CAROL A. BRATCHER, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 19-cv-4015-SAC-TJJ |
| | ) | |
| BIOMET ORTHOPEDICS, LLC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiffs' Motion for Leave to File Amended Complaint (ECF No. 142). Following transfer of this case from the Multi-District Litigation action of which it was a part, Plaintiffs seek leave to amend their complaint to conform to evidence revealed in discovery. Specifically, Plaintiffs seek to add a claim for punitive damages and add Zimmer Biomet Holdings, Inc. as a Defendant. Putative Defendant Zimmer Biomet Holdings, Inc. opposes the motion. Upon consideration of the matter, the Court finds the motion should be granted.

Factual Background

On November 4, 2015, Plaintiffs filed their complaint in the Northern District of Indiana as part of a Multi-District Litigation (MDL) action titled *In re: Biomet M2a Magnum Hip Implant Products Liability Litigation*, No. 2391.[1] Plaintiffs' case was transferred from the MDL to the District of Kansas on February 22, 2019, as part of the third remand group.[2] During an

---

[1] *See* Complaint, ECF No. 1.

[2] *See* Group 3 Transfer Order and Explanation to Receiving Courts, ECF No. 127.

1

April 16, 2019 Status Conference, Plaintiffs indicated they would be seeking permission to amend their complaint to make it conform to evidence they had obtained during discovery in the MDL, and the Court set an April 30, 2019 deadline for Plaintiffs to file a motion to amend.[3] This timely motion followed.

Plaintiffs' claims, and those of other plaintiffs in the MDL, relate to the alleged failure of the Biomet M2a-Magnum and Biomet M2a-38 metal-on-metal hip implant systems. The MDL plaintiffs claimed that the design of these systems generated high levels of metal ions, caused metallosis in the surrounding tissue and/or failed early.[4] Plaintiff Carol Bratcher had an M2a-Magnum prosthesis implanted in her right hip on January 5, 2009, and another during a total hip replacement of her left hip on January 11, 2010. As a result of pain in both hips, Plaintiff had revision surgery on her left hip on January 12, 2015, and on her right hip on February 23, 2015. During these surgeries, the M2a-Magnum devices were removed. Plaintiffs allege products liability, negligence, breach of implied and express warranties, violation of the Kansas Consumer Protection Act, and Loss of Consortium claims in both their original and proposed amended complaints.

Defendants in the MDL are Biomet, Inc.; Biomet Orthopedics, LLC; Biomet Manufacturing, LLC; and Biomet U.S. Reconstruction, LLC—the same Defendants Plaintiffs named in their complaint.[5] Plaintiffs now seek to add[6] Zimmer Biomet Holdings, Inc. (ZBH) as

---

[3] *See* ECF No. 141.

[4] *See* ECF No. 127 at 2.

[5] Plaintiffs named Biomet Manufacturing Corp. instead of Biomet Manufacturing, LLC, but at the time they filed their complaint the latter was known as the former. *See* ECF No. 127 at 3-4 & n.2.

[6] The Court shares the confusion raised in the response regarding whether Plaintiffs seek to add ZBH or to replace Biomet, Inc. with ZBH. For purposes of this motion, the Court construes

a Defendant because in June 2015 ZBH acquired Biomet, Inc., and Plaintiffs allege (1) the acquisition constituted a *de facto* merger which makes ZBH a successor in liability to Plaintiffs' claims against Biomet, Inc., and (2) in assuming the manufacturing responsibilities and research and development efforts of Biomet, Inc., ZBH concomitantly took on Biomet, Inc.'s post-sale duty to warn imposed by Kansas law.

## Legal Standard

Federal Rule of Civil Procedure 15(a) governs the amendment of pleadings before trial. It provides that the parties may amend a pleading once "as a matter of course" before trial if they do so within (A) 21 days after serving the pleading, or (B) "if the pleading is one to which a responsive pleading is required," 21 days after service of the responsive pleading or a motion under Fed. R. Civ. P. 12(b), (e), or (f), whichever is earlier.[7] Other amendments are allowed "only with the opposing party's written consent or the court's leave."[8] Rule 15(a)(2) also instructs that the court "should freely give leave when justice so requires."[9] The court's decision to grant leave to amend a complaint, after the permissive period, is within the trial court's discretion and will not be disturbed absent an abuse of that discretion.[10] The court may deny leave to amend upon a showing of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue

---

Plaintiffs' motions as seeking to both add ZBH and retain Biomet, Inc. Plaintiffs are directed to modify their proposed First Amended Complaint to clarify this issue.

[7] Fed. R. Civ. P. 15(a)(1).

[8] Fed. R. Civ. P. 15(a)(2).

[9] *Id.*; *accord Foman v. Davis*, 371 U.S. 178, 182 (1962).

[10] *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006).

3

prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."[11]

If a proposed amendment would not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), or fails to state a claim upon which relief may be granted, the court may deny leave to amend.[12] "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[13] A complaint or amendment thereof need only make a statement of the claim and provide some factual support to withstand dismissal.[14] It does not matter how likely or unlikely the party is to actually receive such relief, because for the purposes of dismissal all allegations are considered to be true.[15] The party opposing the amendment has the burden of showing the proposed amendment is futile.[16]

## Analysis

ZBH argues the Court should deny Plaintiffs' motion to amend their complaint because this court cannot exercise personal jurisdiction over ZBH, thus rendering the motion futile. According to ZBH, Plaintiffs have not made a prima facie case for personal jurisdiction over ZBH for three reasons. First, ZBH asserts that because it is a Delaware corporation with a

---

[11] *Id.* (quoting *Foman*, 371 U.S. at 182).

[12] *Mochama v. Butler Cnty., KS*, No. 14-2121-KHV-TJJ, 2014 WL 3767685, at *1 (D. Kan. July 31, 2014) (citing *Fulton v. Advantage Sales & Mktg., LLC*, No.3:11-CV-01050-MO, 2012 WL 5182805, at *2 (D. Or. Oct. 18, 2012)).

[13] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 at 570 (2007)).

[14] *Twombly*, 550 U.S. at 555.

[15] *Id.* at 556.

[16] *Layne Christensen Co. v. Bro-Tech Corp.*, No. 09-CV-2381-JWL-GLR, 2011 WL 3847076, at *5 (D. Kan. Aug. 29, 2011).

principal place of business in Indiana, it is not subject to this court's general jurisdiction. ZBH denies any specific relationship to Ms. Bratcher's hip implants because it did not design, manufacture, promote, or sell the specific devices that were placed in her body. Furthermore, ZBH did not acquire Biomet[17] until after Ms. Bratcher had the Magnum prostheses surgically removed from her hips. ZBH quotes a recent order in *Garnes et al. v. Biomet Orthopedics, LLC et al.*, Case No. 2:18-cv-01529 (S.D. W. Va.), which had been transferred on December 12, 2018 by the MDL's Second Transfer Order.[18] Following transfer to the West Virginia court, Plaintiffs in *Garnes* were granted leave to amend their complaint to add ZBH as a party Defendant.[19] ZBH moved to dismiss for lack of personal jurisdiction. The court granted the motion, noting plaintiffs' failure to allege ZBH had a relationship to the specific hip implant device at issue or had engaged in activity directed toward West Virginia, and finding that ZBH had no role in the design, manufacture, promotion, sale, or distribution of that device. ZBH asserts the same analysis applies here.

Second, ZBH asserts that its status as Biomet, Inc.'s parent company, without more, does not establish personal jurisdiction. ZBH denies Plaintiffs' allegation that "each Defendant was the representative, agent, employee, joint venture, or alter ego of the other entities."[20] ZBH points out that Plaintiffs do not allege ZBH had independent contacts with Kansas during the

---

[17] ZBH states that in June 2015 it acquired not only Biomet, Inc., but also "the other Biomet Defendants in this case." ECF No. 143 at 2.

[18] *See* Exhibit A to Group 2 Transfer Order and Explanation to Receiving Courts, *In re: Biomet M2a Magnum Hip Implant Products Liability Litigation*, Cause No. 3:12-MD-2391 (ECF No. 68).

[19] *Garnes*, Order dated Feb. 19, 2019 (ECF No. 83).

[20] Plaintiffs' proposed First Amended Complaint, ECF No. 142-1 ¶8.

relevant time period, nor do Plaintiffs describe any activities ZBH directed Biomet to take in Kansas following Ms. Bratcher's surgeries that could have impacted her.

Finally, ZBH contends Plaintiffs' proposed amended complaint provides no basis to pierce the corporation veil between ZBH and the Biomet Defendants. ZBH asserts, without evidentiary support, that it exercised no control over the Biomet Defendants at any time relevant to Plaintiffs' proposed First Amended Complaint.

Plaintiffs respond to ZBH's arguments by urging a finding that ZBH's acquisition of Biomet, Inc. constituted a *de facto* merger making ZBH a successor in liability to Plaintiffs' claims against Biomet, Inc. Plaintiffs arrive at that conclusion through the following construct: (1) under Kansas law, courts apply the law of the state where the asset transfer occurred to determine whether successor liability applies to a given business asset purchase; (2) on information and belief, the purchase agreement occurred in the state of Indiana, which recognizes successor liability under certain circumstances, including a purchase that is a *de facto* consolidation or merger; and (3) the central inquiry in determining whether a *de facto* merger has occurred is determining whether the economic effect of the transaction makes it a merger in all but name. And Plaintiffs point to the following facts they believe support their conclusion: (1) the companies had continuity of management and location after the acquisition because ZBH maintained the same principal place of business, secretary, and at least one director; (2) there was continuity of business lines because ZBH is still in the business of selling joint replacement systems, including hip replacement systems; (3) that Biomet did not dissolve after the acquisition does not foreclose a finding of *de facto* merger; and (4) ZBH assumed the obligations necessary for the ongoing operation of Biomet, Inc.'s business as reflected in the terms of the merger agreement underlying the acquisition.

The question is whether Plaintiffs' proposed First Amended Complaint is futile because it could not withstand a motion to dismiss. While the standard for surviving a motion to dismiss demands little of Plaintiffs—they need only state a claim for relief that is facially plausible and provide some factual support for it—assertions Plaintiffs make in their brief concerning successor liability are not found in their proposed pleading. Instead, Plaintiffs' assertions require an analysis of the legal theory of successor liability and the factors that create a *de facto* merger, and access to a body of facts relevant to those legal issues. But similar to whether Plaintiffs can pierce the corporate veil, as ZBH frames the issue, the Court cannot apply law to facts because the submissions do not provide a sufficient factual record. Accordingly, the Court cannot grant Plaintiffs' motion on the basis that ZBH is a successor in liability to Plaintiffs' claims against Biomet, Inc. on the theory of *de* facto merger.

However, Plaintiffs' proposed First Amended cCmplaint also asserts for the first time a count for punitive damages. When Plaintiffs indicated during a Status Conference their intent to include a punitive damages claim, Defendants said they would object. However, Defendants have withdrawn their objection to Plaintiffs' ability to assert a punitive damages claim in an amended pleading.[21] In the punitive damages count, Plaintiffs include the following allegations:

> 139. Despite knowledge of the risk of premature failure of MoM hip systems, Biomet, acting through its officers, directors, and managing agents, for the purpose of enhancing its profits, knowingly and deliberately failed to remedy the known defects in the M2a Hip Systems and failed to warn the public, including Plaintiff, of the extreme risk of injury occasioned by said defects inherent in the M2a system even as the M2a-38 reached a reported failure rate of nearly twenty percent at ten years. This rate is approximately four times higher than the benchmark revision rate for a hip system to be considered safe and effective.
>
> 140. Indeed, as similar products including the DePuy ASR, DePuy Pinnacle, Zimmer Durom, Wright Conserve, and Smith & Nephew Birmingham Hip

---

[21] *See* ECF No. 143 n.1.

Resurfacing were recalled or withdrawn from the market in the wake of thousands of failure reports and associated lawsuits, Biomet chose not to issue a recall of the M2a Hip Systems in a wanton disregard for the safety of Plaintiff and the public at large. In fact, as these reports were pouring in during the period from 2008 to 2010, Biomet doubled down on its MoM hip systems, organizing a "Re-Launch" of the Magnum system, supported by promotional literature, posters, marketing brochures, and public relations kits.

141. Biomet likewise exercised grossly negligent practices in manufacturing and packaging the Hip Systems, in violation of the "good manufacturing requirements" as required by the FDA. This course of conduct led to the issuance of a warning from the FDA to Biomet in 2018 as a result of its failure to cure deficiencies in its manufacturing practices observed as part of a 2016 audit of its Warsaw, Indiana, manufacturing facilities. Biomet's failure to maintain adequate manufacturing conditions and practices for the Hip System and subsequent failure to correct the same created a safety risk to the purchasers of its various products including the Hip Systems.

142. Defendants and their agents, officers, and directors intentionally proceeded with the manufacturing, sale, distribution, and marketing of the M2a Hip Systems, knowing these actions would expose users to serious danger. In order to advance Biomet's pecuniary interest and monetary profits, Biomet made claims that the dangers of MoM hip systems were unknown, or that they were the fault of patients and surgeons, even as evidence to the contrary continued to pile up year after year. Biomet failed to recall the M2a hip systems in the United States, even though they were recalled years earlier in Australia and other jurisdictions.[22]

These allegations assert that Defendants—including ZBH—did not comply with their continuing duty to warn of known dangers associated with the M2a hip systems, a duty Plaintiffs assert continues after the product is placed into the stream of commerce.[23] In their reply brief, Plaintiffs also assert that in *Patton v. TIC United Corporation,* 77 F.3d 1235 (10th Cir. 1996), the

---

[22] ECF No. 142-1.

[23] *See Patton v. Hutchinson Wil-Rich Mfg. Co.*, 861 P.2d 1299, 1313 (Kan. 1993) ("We recognize a manufacturer's post-sale duty to warn ultimate consumers who purchased the product who can be readily identified or traced when a defect, which originated at the time the product was manufactured and was unforeseeable at the point of sale, is discovered to present a life threatening hazard.").

Tenth Circuit adopted the post-sale duty of a successor corporation under Kansas law in the following passage:

> The Kansas Court of Appeals held that a "successor entity" bearing no corporate relationship to the original manufacturer may incur a duty to warn if it has knowledge of the defective condition of the predecessor's product, and has a "more than casual" relationship with the customers of the predecessor entity that is an "economic benefit" to the successor. *Stratton v. Garvey Int'l, Inc.,* 9 Kan.App.2d 254, 676 P.2d 1290, 1294 (1984) (affirming judgment for successor because its relationship to its predecessor's customers was too tenuous). We agree with the district court that *Stratton,* alone or read together with *Patton I,* extended a post-sale duty to warn to TIC.[24]

In their proposed First Amended Complaint, Plaintiffs allege ZBH learned of several defects with the M2a hip system, resulting in a 2015 Australian recall of the product which occurred while the Biomet, Inc. acquisition was being negotiated, and also resulting in the need to issue a 2016 Field Safety Corrective Action notice regarding the product in Europe.[25]

The Court finds Plaintiffs' factual allegations sufficiently state a claim that ZBH owes Plaintiffs a post-sale duty to warn. And because the claim arises from knowledge ZBH is said to have obtained while it was acquiring Biomet, Inc. and after the acquisition, and its failure to act on that knowledge in alleged dereliction of its duty to Plaintiffs, ZBH's personal jurisdiction arguments do not apply.[26] Moreover, ZBH does not object to the motion insofar as it adds a claim for punitive damages.

---

[24] *Patton v. TIC United Corp.*, 77 F.3d at 1240–41. In *Patton*, the manufacturer's stock and assets were transferred among a number of entities, and in later a wholly-owned subsidiary of defendant TIC purchased the manufacturer's assets, business, goodwill, and trade name.

[25] ECF No. 142-1 ¶¶78-88.

[26] The Court notes that in objecting it is amenable to personal jurisdiction in this district, ZBH denied having any contacts with Kansas during "the relevant time period." ECF No. 143 at 6. Although not defined, in the context of ZBH's argument it appears ZBH defines the relevant time period to have ended no later than when Ms. Bratcher had revision surgery. Plaintiffs' allegations quoted above refer to a later period of time.

It is well settled that a court may deny a motion to amend as futile if the proposed amendment would not withstand a motion to dismiss or if it otherwise fails to state a claim.[27] The issue before this Court is therefore not whether Plaintiffs ultimately will prevail on their claim, but whether they are entitled to offer evidence to support their allegations.[28]

The Court concludes that Plaintiffs' proposed First Amended Complaint is not futile. Plaintiffs should be afforded the opportunity to offer evidence to support their allegations. ZBH suffers no prejudice from the amendment, and the Court finds that justice requires granting Plaintiffs' motion.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Leave to File Amended Complaint (ECF No. 142) is **GRANTED**, with modifications as directed in footnote 6. In accordance with D. Kan. Rule 15.1(b), Plaintiffs shall electronically file and serve their First Amended Complaint within five business days of the date of this order.

**IT IS SO ORDERED.**

Dated this 3rd day of June, 2019 at Kansas City, Kansas.

Teresa J. James
U. S. Magistrate Judge

---

[27] *Lyle v. Commodity Credit Corp.*, 898 F. Supp. 808, 810 (D. Kan. 1995) (citing *Ketchum v. Cruz*, 961 F.2d 916, 920 (10th Cir. 1992)).

[28] *See Baumann v. Hall,* No. 98-2126-JWL, 1998 WL 513008, at *1 (D. Kan. July 15, 1998) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).